**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

GREGORY E. FAULCONER
CASSANDRA MAE FAULCONER
aka SANDY MAE FAULCONER
fdba KODAK TRADE CENTER

     Debtors

TENNESSEE EDUCATION
LOTTERY CORPORATION

     Plaintiff

   v.

GREGORY E. AND
CASSANDRA MAE FAULCONER

     Defendants

Case No. 10-35176

Adv. Proc. No. 11-3017

**MEMORANDUM ON PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT**

APPEARANCES: ROBERT E. COOPER, JR.
     TENNESSEE ATTORNEY GENERAL AND REPORTER
      William F. McCormick, Esq.
      Post Office Box 20207
      Nashville, Tennessee 37202-0207
      Attorneys for Plaintiff

     JOHN H. FOWLER, ESQ.
      112 Bruce Street
      Sevierville, Tennessee 37862
      Attorney for Defendants

**RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE**

This adversary proceeding is before the court upon the Complaint of the Tennessee Education Lottery Corporation to Determine Dischargeability of Debt Under 11 U.S.C. § 523(a)(4) (Complaint) filed by the Plaintiff on January 28, 2011, seeking a judgment in the amount of $22,981.96 and a determination of nondischargeability under 11 U.S.C. § 523(a)(4) (2006). The Defendants filed the Answer of Defendants Gregory E. Faulconer and Cassandra Mae Faulconer on February 8, 2011.

On August 11, 2011, the Plaintiff filed a Motion for Summary Judgment accompanied by a brief and the Plaintiff's Statement of Material Facts as to Which There is No Genuine Dispute (Statement of Undisputed Facts) as required by E.D. Tenn. LBR 7056-1, along with ten exhibits: (1) the Complaint initiating this adversary proceeding with the Defendants' Retailer Application dated November 14, 2003, and Collections Detailed Notes Listing attached; (2) the Answer filed by the Defendants; (3) the Tennessee Education Lottery Implementation Law codified at Tennessee Code Annotated § 4-51-101 et seq.; (4) the Affidavit of Vicki Updike, Vice President of Finance for the Plaintiff, dated May 7, 2008, with weekly statements of Kodak Trade Center and bank notifications from the Plaintiff's financial institution attached; (5) the deposition of Cassandra Faulconer dated April 22, 2008; (6) the deposition of Gregory Faulconer dated April 21, 2008; (7) the Affidavit of Joan Ward, Sales Representative for the Plaintiff, dated May 1, 2008; (8) the Affidavit of Kyle Loveday, an officer in the Sevier County Sheriff's Department, with a Sevier County Sheriff's Department Incident Report dated June 15, 2005, attached; (9) an Order entered by the Chancery Court for Davidson County, Tennessee, on July 8, 2008, in *Tennessee Education Lottery Corporation v. Cassandra M . Faulconer, et al.*, No. 06-1190-II (Judgment); and (10) the

Plaintiff's Policy Manual, Chapter 2 - Retailer Rules and Regulations and Chapter 3 - Game Rules and Regulations.

The Defendants did not file a response to either the Motion for Summary Judgment or the Statement of Undisputed Facts. Accordingly, pursuant to E.D. Tenn. LBR 7056-1(b), the material facts set forth in the Statement of Undisputed Facts are deemed admitted, and in accordance with E.D. Tenn. LBR 7007-1, the court construes the lack of response to the Motion for Summary Judgment as a lack of opposition by the Defendants.

This is a core proceeding. 28 U.S.C. § 157(b)(2)(I) (2006).

## I

On November 14, 2003, the Defendants, co-owners and sole proprietors of Kodak Trade Center located at 3661 Douglas Dam Road, Kodak, Tennessee, submitted a Retailer Application to the Plaintiff, which was accepted on December 12, 2003. STAT. OF UNDISP. FACTS at ¶¶ 1, 19; COLL. EX. 1; UPDIKE AFF. at ¶ 3. As required, the Defendants opened a dedicated lottery account with Tennessee State Bank and attended lottery training on January 26, 2004. STAT. OF UNDISP. FACTS at ¶¶ 13, 20; COLL. EX. 1. On or about January 16, 2004, the Defendants' retailer terminal was installed, and the Defendant, Cassandra Faulconer, was given the passcode required to confirm and activate lottery tickets and told about the importance of keeping the passcode private, with only those persons listed on page 5 of the Retailer Application as "Persons Authorized to Conduct On-Site Lottery Transactions" – each of the Defendants and Cynthia Hickman, Assistant Manager – to be given the passcode. STAT. OF UNDISP. FACTS at ¶¶ 6-7, 18; COLL. EX. 1; WARD AFF. at ¶ 5.

Throughout the time the Defendants sold lottery tickets, they were operating under the terms of the Retailer Contract authorizing them to sell lottery tickets, deposit proceeds from the sale of tickets, advertise as a lottery retailer, and receive commissions from sales and cash payouts without granting the authority to represent or bind the State of Tennessee other than as a retailer of lottery tickets, to invest lottery proceeds, to make discretionary distributions from lottery proceeds, or to delegate their duties to anyone without the Plaintiff's approval as set forth in the Retailer Application. STAT. OF UNDISP. FACTS at ¶ 2; COLL. EX. 1. Further, under the terms of the Retailer Contract, the Defendants owed a fiduciary duty to preserve and account for proceeds from the sale of lottery tickets and unsold tickets. TENN. CODE ANN. § 4-51-120 (2005); STAT. OF UNDISP. FACTS at ¶ 13; COLL. EX. 1; EX. 3. The Defendants made full payment on all invoices from January 20, 2004 through May 7, 2005; however, they did not pay the proceeds due for lottery tickets issued, confirmed, and activated on May 17 and May 25, 2005, totaling $20,616.59. STAT. OF UNDISP. FACTS at ¶¶ 3, 10; UPDIKE AFF. at ¶¶ 4, 8, 11, 15. Of this amount, the Defendants paid $1,616.00 on May 24, 2005, and $250.00 on December 27, 2005, toward the outstanding balance owed. UPDIKE AFF. at ¶¶ 12-13.

On June 15, 2005, the Defendant, Cassandra Faulconer, met with Kyle Loveday, an officer with the Sevier County Sheriff's Department, to discuss the theft of lottery tickets from Kodak Trade Center, after which Mr. Loveday prepared and filed an Incident Report on June 16, 2005. STAT. OF UNDISP. FACTS at ¶ 28; LOVEDAY AFF. at ¶¶ 4-5, EX. A. During the conversation and as reflected on the Incident Report, the Defendant implicated Brenda Dodgen, an employee of Kodak Trade Center, who had keys to the store and keys to the locked room where lottery tickets were kept.

STAT. OF UNDISP. FACTS at ¶ 21; LOVEDAY AFF. at ¶¶ 6-7, EX. A; G. FAULCONER DEPO. at p.34, ln.4-9.  Additionally, Ms. Faulconer had provided employees with the passcode and shown them how to operate the lottery terminal, which was left on all day, and to activate tickets.[1]  STAT. OF UNDISP. FACTS at ¶¶ 8-9; LOVEDAY AFF. at ¶¶ 8-9, EX. A; C. FAULCONER DEPO. at p.49, ln.3 through p.50, ln.10; G. FAULCONER DEPO. at p.34, ln.8-15; p.38, ln.10-18.  None of the employees, however, had been subject to a background check by the Defendants prior to providing access to the lottery tickets and terminal, nor had the Defendants obtained performance bonds, and the Defendants did not have tracking, accounting, or internal theft precaution in place at Kodak Trade Center.  STAT. OF UNDISP. FACTS at ¶¶ 12, 16-17.

Thereafter, the Plaintiff brought a lawsuit against the Defendants in the Davidson County Chancery Court, *Tennessee Education Lottery Corporation v. Cassandra M . Faulconer, et al.*, No. 06-1190-II, and was awarded a judgment for breach of contract in the amount of $18,750.59 on July 8, 2008.  STAT. OF UNDISP. FACTS at ¶ 11; EX. 9.  Including post-judgment interest and court costs, the Defendants are indebted to the Plaintiff pursuant to the Judgment in the amount of $22,981.96.  STAT. OF UNDISP. FACTS at ¶ 4.  On October 27, 2010, the Defendants filed the Voluntary Petition commencing their case under Chapter 7 of the Bankruptcy Code.  The Plaintiff timely filed the Complaint initiating this adversary proceeding on January 28, 2011.

---

[1] Instant tickets are delivered to retailers in packs and assigned bar codes for tracking purposes.  After leaving the Plaintiff but en route to retailers, tickets are in "issued" status.  Once packs are received by retailers, they are scanned and in "confirmed" status by using the passcode assigned to each retailer.  Prior to sale, tickets are scanned again and their status becomes "activated," which informs the Plaintiff that individual tickets from the pack are being sold.  Packs are then considered "settled" on the earlier of twenty-one days after activation or the date upon which the retailer changes the status.  Retailers are then billed for "settled" tickets beginning on Sunday at 5:00 a.m. through Saturday at 1:00 a.m., but they are not billed until after lottery tickets are activated.  STAT. OF UNDISP. FACTS at ¶¶ 5-6; UPDIKE AFF. at ¶ 5.

## II

Rule 56 of the Federal Rules of Civil Procedure states that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law[,]" with the procedures concerning summary judgment requiring the following:

> (1) ***Supporting Factual Positions***. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>>
>> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> (2) ***Objection That a Fact Is Not Supported by Admissible Evidence***. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> (3) ***Materials Not Cited***. The court need consider only the cited materials, but it may consider other materials in the record.
>
> (4) ***Affidavits or Declarations***. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED. R. CIV. P. 56(c) (applicable in adversary proceedings by virtue of Rule 7056 of the Federal Rules of Bankruptcy Procedure). Per the Notes of Advisory Committee on the 2010 amendments, the standard for granting summary judgment has not changed, and "[t]he amendments will not affect continuing development of the decisional law construing and applying [the standard]."

When deciding a motion for summary judgment, the court does not weigh the evidence to determine the truth of the matter asserted but simply determines whether a genuine issue for trial exists, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986). As the moving party, the Plaintiff bears the burden of proving that, based upon the record presented to the court, there is no genuine dispute concerning any material facts, and controlling law makes it clear that the Judgment is based on defalcation while in a fiduciary capacity and is nondischargeable pursuant to § 523(a)(4), thus entitling the Plaintiff to judgment in this adversary proceeding as a matter of law. *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986); *Owens Corning v. Nat'l Union Fire Ins. Co.*, 257 F.3d 484, 491 (6th Cir. 2001).

The burden then shifts to the Defendants to prove that there are genuine disputes of material fact for trial, although reliance solely on allegations or denials contained in the pleadings or "mere scintilla of evidence in support of the nonmoving party will not be sufficient." *Nye v. CSX Transp., Inc.*, 437 F.3d 556, 563 (6th Cir. 2006); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (footnote omitted). The facts and all resulting inferences are viewed in a light most favorable to the non-movant, and the court decides whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 106 S. Ct. at 2512. Nevertheless, "[w]here the record taken as a

whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 106 S. Ct. at 1356 (citations omitted).

Based upon the record, the court finds that there is no genuine dispute as to material facts, and the Plaintiff is entitled to summary judgment as a matter of law that the Judgment entered by the Davidson County Chancery Court on July 8, 2008, is nondischargeable under § 523(a)(4).

### III

Determinations of dischargeability are governed by 11 U.S.C. § 523, which provides, in material part, that "[a] discharge under section 727[2], . . . of this title does not discharge an individual debtor from any debt— . . . . (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]" 11 U.S.C. § 523(a). Courts construe § 523(a) strictly against the parties seeking nondischargeability and liberally in favor of debtors, and the party seeking nondischargeability bears the burden of proof as to each element by a preponderance of the evidence. *Grogan v. Garner*, 111 S. Ct. 654, 661 (1991); *Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir. 1998). Within the scope of § 523(a)(4), the Plaintiff's Complaint is based upon the defalcation while in a fiduciary capacity prong.[3] Defalcation

---

[2] Chapter 7 debtors receive a discharge of pre-petition debts, "[e]xcept as provided in section 523 of this title[.]" 11 U.S.C. § 727(b) (2006). The Order granting the Defendants' discharge was entered on March 2, 2011.

[3] In addition to defalcation while in a fiduciary capacity, § 523(a)(4) also includes embezzlement, defined as "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come[,]" *Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1172-73 (6th Cir. 1996), and larceny, defined as "[t]he unlawful taking and carrying away of property of another with intent to appropriate it to use inconsistent with latter's rights[,]" BLACK'S LAW DICTIONARY 881 (6th ed. 1990), when a debtor wrongfully and with fraudulent intent takes property from its rightful owner. *Great Am. Ins. Co. v. O'Brien (In re O'Brien)*, 154 B.R. 480, 483 (Bankr. W.D. Tenn. 1993) (citing *Kaye v. Rose (In re Rose)*, 934 F.2d 901, 903 (7th Cir. 1991)).

"encompasses not only embezzlement and misappropriation by a fiduciary, but also the 'failure to properly account for such funds.'" *Bd. of Trs. of the Ohio Carpenters' Pension Fund v. Bucci (In re Bucci)*, 493 F.3d 635, 639 (6th Cir. 2007) (quoting *Capitol Indem. Corp. v. Interstate Agency, Inc. (In re Interstate Agency, Inc.)*, 760 F.2d 121, 125 (6th Cir. 1985)); *see also Cent. Hanover Bank & Trust Co. v. Herbst*, 93 F.2d 510, 511-12 (2d Cir. 1937) ("[W]hen a fiduciary takes money upon a conditional authority which may be revoked and knows at the time it may, he is guilty of a 'defalcation' though it may not be 'fraud,' or an 'embezzlement,' or perhaps not even a 'misappropriation.'").

"This standard does not require a showing that the debtor acted intentionally[;]" *Sangal v. Strickfaden (In re Strickfaden)*, 421 B.R. 802, 807 (Bankr. E.D. Mich. 2009), nevertheless, "defalcation per se" does not exist. "[I]nstead the debtor must have been objectively reckless in failing to properly account for or allocate funds[,]" *Patel v. Shamrock Floorcovering Svcs., Inc. (In re Patel)*, 565 F.3d 963, 970 (6th Cir. 2009), since "[t]he mere failure to meet an obligation while acting in a fiduciary capacity simply does not rise to the level of defalcation[.]" *R.E. Am., Inc. v. Garver (In re Garver)*, 116 F.3d 176, 179 (6th Cir. 1997). In order to sustain a determination of nondischargeability under this subsection, the Plaintiff must prove "(1) a pre-existing fiduciary relationship; (2) breach of that fiduciary relationship; and (3) a resulting loss." *Commonwealth Land Title Co. v. Blaszak (In re Blaszak)*, 397 F.3d 386, 390 (6th Cir. 2005) (citing *Garver*, 116 F.3d at 178-79).

Whether a relationship falls within the scope of § 523(a)(4) is a question of "federal, not state, law." *Blaszak*, 397 F.3d at 390. The Sixth Circuit interprets "fiduciary capacity" narrowly,

9

not intending for it to extend its inclusion to a party "who merely fails to meet an obligation under a common law fiduciary relationship[,]" *Bucci*, 493 F.3d at 639, but limiting its application "to only those situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor." *Garver*, 116 F.3d at 180. Moreover, "for a trust relationship to satisfy § 523(a)(4), the alleged fiduciary must have duties that preexist the act creating the debt." *Bucci*, 493 F.3d at 643.

In *Tenn. Educ. Lottery Corp. v. Cooper (In re Cooper)*, 430 B.R. 480 (Bankr. E.D. Tenn. 2010), this court, after thorough review of the Retailer Application, the Retailer Contract, the Plaintiff's Policy Manual, Tennessee Code Annotated § 4-51-101 et seq., and relevant case law, determined that an express trust is created and that lottery retailers fall within the Sixth Circuit's definition of fiduciary. More specifically, the court held the following:

> Based upon the foregoing, the court finds that an express trust was created between the Plaintiff and the Defendant by virtue of Tennessee Code Annotated § 4–51–120, the Retailer Contract, the Retailer Application, and the Retailer Rules and Regulations. First, the statute defines the identifiable trust res: all proceeds from the sale of lottery tickets or shares, including unsold instant tickets in the retailer's possession and cash proceeds of the sale of any lottery product, less allowable sales commissions and cash prizes awarded to purchasers, which, pursuant to Tennessee Code Annotated § 4–51–111(a)(1), are property of the Plaintiff and which "shall constitute a trust fund until paid to the corporation either directly or through the corporation's authorized collection representative." TENN. CODE ANN. § 4–51–120(a). Similarly, the Retailer Contract expressly identifies as the trust fund res "all Instant Tickets accepted from the TEL or its distributor, as well as cash proceeds from the sale of any lottery products," COMPL. EX. 1 at ¶ 8, and states that "[a]ll proceeds from the sale of lottery Tickets and all other funds due the TEL shall constitute a trust fund in favor of the TEL until paid to the TEL." COMPL. EX. 1 at ¶ 5. Finally, the Retailer Rules and Regulations likewise state that all proceeds from the sale of tickets and other funds due the TEL "shall constitute a trust fund in favor of the TEL until paid to the TEL, and such proceeds are required by law to be deposited daily into the . . . separate bank account no later than the close of the next

banking day after the date of their collection by the Retailer." RETAILER RULES AND REGULATIONS at ¶ 2.12.A.

The Retailer Contract additionally establishes the Defendant as trustee and the Plaintiff as beneficiary, setting forth the following duties by the Defendant: (1) requiring the creation and maintenance of a separate bank account in his business's name "as Trustee for the Tennessee Education Lottery Corporation;" (2) requiring the Defendant to make daily deposits of all lottery sales proceeds into the separate bank account; (3) requiring the Defendant to authorize the Plaintiff access to the separate account through electronic funds transfer; and (4) ensuring that the account funds are in the account for access by the Plaintiff, all of which are reiterated in the Retailer Rules and Regulations and are authorized by Tennessee Code Annotated § 4–51–120(b)(1). COMPL. EX. 1 at ¶ 5; RETAILER RULES AND REGULATIONS at ¶ 2.12.A. These duties are also set forth in Part 4 of the Retailer Application, which required the Defendant to establish a separate bank account "for the preservation and transfer of lottery funds" to which the Plaintiff had access through electronic funds transfer and stated that the account "must be specified 'IN TRUST FOR THE TENNESSEE EDUCATION LOTTERY CORPORATION,' " with Andrew Johnson Bank required to certify and acknowledge that the Defendant had, in fact, established the account in the manner directed by the Retailer Contract. COLL. STIP. EX. 1. Furthermore, in the event of the Defendant's death or insolvency, the Plaintiff enjoys "preference over all debts or demands" as to any proceeds from the sale of lottery tickets. TENN. CODE ANN. § 4–51–120(c).

Under the Retailer Contract, the Defendant had the power to sell lottery tickets, deposit proceeds from the sale of tickets, advertise himself as a lottery retailer, and receive commissions on the sale of lottery tickets and cash payouts. He was not authorized to invest lottery proceeds or otherwise make discretionary distributions from funds that constituted lottery proceeds, and he was not authorized to delegate his duties without the express authority of the Plaintiff. Additionally, as required under the terms of the Retailer Contract, the stipulated Retailer Application, and section 2.12 of the Retailer Rules and Regulations, the Defendant established a bank account with Andrew Johnson Bank "IN TRUST FOR THE TENNESSEE EDUCATION LOTTERY CORPORATION" which was used exclusively for the deposit and holding of lottery ticket sale proceeds and the authorized transfer of funds to and from the Plaintiff via electronic transfer. The trust res—inclusive of proceeds and unsold tickets—was clearly created at the time the Defendant created the bank account and when he accepted the tickets from the Plaintiff to be held "in trust." At that moment, under Tennessee law, the Defendant, as trustee, held legal title to the unsold lottery tickets he possessed and the lottery ticket sale proceeds he was to receive, even though equitable title remained in the Plaintiff. There can be no question that the parties intended to create a trust account into which the Defendant was required to deposit the lottery ticket sale proceeds received and collected by him

11

> but belonging to the Plaintiff, and his duty to pay over the proceeds to the Plaintiff arose upon his receipt of the lottery tickets.
>
> Having found the existence of an express trust, the court likewise finds that the parties' relationship satisfies the Sixth Circuit's definition of fiduciary under § 523(a)(4). As previously discussed, although not defined by the Bankruptcy Code, defalcation includes the "misappropriation of trust funds or money held in any fiduciary capacity; failure to properly account for such funds." BLACK'S LAW DICTIONARY 417 (6th ed.1994). In this circuit, once the existence of an express or technical trust has been established and it is proved that the trustee to the proven trust has failed to properly account for or allocate funds in an objectively reckless manner, the requisite fiduciary relationship is met. In this case, it is undisputed that the Defendant did not properly account for lottery ticket sale proceeds in the amount of $5,104.00 due the Plaintiff. Because there was an express trust created under the Retailer Contract, Retailer Application, Tennessee Code Annotated § 4–51–120, and the Retailer Rules and Regulations, the Defendant owed a fiduciary duty to the Plaintiff to pay over all lottery ticket sale proceeds, and his failure to do so constitutes defalcation for the purposes of § 523(a)(4). The $5,104.00 owed the Plaintiff by the Defendant in lottery ticket sale proceeds is nondischargeable.

*Cooper*, 430 B.R. at 497-99.

The Defendants in this adversary proceeding were operating under the same statutes, identical Retailer Application and Retailer Contract, and the exact Retailer Rules and Regulations as was the defendant in *Cooper*. They understood that they were the responsible parties to the Plaintiff and that they were responsible for the conduct of their employees. STAT. OF UNDISP. FACTS at ¶¶ 14-15; C. FAULCONER DEPO. at p.67, ln.4-6; p.94, ln.18 through p.95, ln.17. Nevertheless, the Defendants did not take precautions to protect the lottery tickets and proceeds. In violation of the governing documents and law, they provided employees with access to the tickets and with the passcode by which tickets were activated although only the Defendants and Cynthia Hickman were persons authorized to conduct lottery transactions pursuant to the Retailer Application. Furthermore, the Defendants did not perform background checks on their employees, carry performance bonds, or

have any sort of internal theft procedures implemented to prevent theft or misappropriation by employees.  As in *Cooper*, an express trust existed between the Plaintiff and the Defendants, who owed a fiduciary duty to the Plaintiff.  Based upon the record, the court finds that the Defendants were reckless with their duty to the Plaintiff such that the debt is nondischargeable under § 523(a)(4) for defalcation while in a fiduciary capacity.

Accordingly, the Motion for Summary Judgment will be granted, and an Order consistent with this Memorandum will be entered.

FILED:  October 12, 2011

BY THE COURT

*/s/  RICHARD STAIR, JR.*

RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE